MURDOCK, Justice.
 

 Nathan Smith and Dale D. Smith appeal from a judgment entered by the Macon Circuit Court in their action against H. Buford Cowart, Debbie Cowart d/b/a DBM Enterprises, and Herman Cowart (collectively “the Cowarts”). We affirm in part, reverse in part, and remand.
 

 I. Facts and Procedural History
 

 In 1994, the Smiths and Buford Cowart formed Heartland Products, Inc. (“Heartland”); Heartland engaged in a landscaping business based in Macon County. The Smiths owned 49 percent of the corporation; Buford Cowart owned 51 percent of the corporation. The Smiths alleged that Heartland owned 13.7 acres of real property and various pieces of equipment — including two forklifts, a loader, a bark screener, and a tub grinder (“the equipment”) — used in the operation of its business. The Cowarts counter that they, not Heartland, owned most of the equipment.
 

 The Smiths claim that they were passive investors in Heartland and that Buford Cowart ran the day-to-day operations of the business. The parties agree that Heartland obtained business loans from SouthTrust Bank in exchange for which SouthTrust obtained a security interest in property owned by Heartland. The parties disagree as to whether the property in which SouthTrust obtained a security interest included the equipment. The Smiths claim that they were the guarantors on the loans, while the Cowarts claim that Buford Cowart also was a guarantor on the loans.
 

 The Smiths claim that Buford Cowart caused Heartland to default on its business loans with SouthTrust, which forced the Smiths to make payments on those loans. The Smiths eventually paid off the loans, and SouthTrust assigned its rights and interests in Heartland’s property resulting from the loans to the Smiths. The Smiths claim that the assignment by SouthTrust gave them ownership rights in the equip-
 
 *804
 
 merit; the Cowarts dispute this claim. The Cowarts assert that the loans had no connection to the equipment because, according to them, Heartland did not own the equipment.
 
 [1]
 

 On May 6, 1999, the Smiths filed a complaint in the Macon Circuit Court against the Cowarts. The gravamen of the complaint was that Buford Cowart had depleted the resources of Heartland without the Smiths’ knowledge for the benefit of businesses owned by Buford Cowart’s wife Debbie Cowart and by Buford Cowart’s father Herman Cowart. The complaint included claims of breach of fiduciary duty, conversion, and dissolution of the corporation. Pertinent to this appeal, the Smiths alleged that Buford Cowart fraudulently transferred some of the equipment to his wife, to be used in DBM Enterprises, a competing landscaping business operated by his wife, and that he diverted some of the equipment to his father, to be used in Heartland Trucking, a business operated by his father.
 

 On June 21, 1999, the Smiths filed a motion for a writ of seizure of the equipment pursuant to Rule 64, Ala. R. Civ. P., as well as for a preliminary injunction to prevent the Cowarts from using the equipment. Nathan Smith filed an affidavit with the motion in which he listed the items of equipment at issue and stated that it was his “belief’ that Heartland owned the equipment. Smith also averred that the equipment had a value of $113,800. The Smiths filed a $250,000 bond with the motion; United States Fidelity & Guaranty Company (“USF & G”) was named in the bond as a surety.
 
 [2]
 

 On June 24,1999, the trial court issued a writ of seizure in which it ordered the sheriff of Lee County to attach all the equipment found at a particular address in Opelika. The order also required the Co-warts to return to Heartland all the equipment that was not seized by the sheriff. Consistent with Rule 64(b)(2)(B), Ala. R. Civ. P., the order stated that the Cowarts were entitled to a prejudgment hearing on the issue of dissolution of the writ of seizure if a written request for such a hearing was served on the Smiths’ counsel within five days of the attachment of the property.
 
 [3]
 
 The record does not reflect, and the
 
 *805
 
 Cowarts do not contend, that the Cowarts made a written request for dissolution of the writ of seizure.
 

 The Smiths state that they received only one item of equipment, a forklift, as a result of the writ of seizure. The Cowarts do not dispute this assertion, though they contend that because of the injunction they could not and did not use any of the equipment until the writ of seizure eventually was dissolved.
 

 On August 13, 1999, Herman Cowart answered the Smiths’ complaint. He also stated a counterclaim of conversion against the Smiths, alleging that they had deprived him of one flashlight, one tarp, and several thousand “yards” of mulch. On December 17, 1999, Buford Cowart and Debbie Cowart jointly answered the Smiths’ complaint. They also filed counterclaims against the Smiths. Debbie Co-wart alleged that she had loaned Heartland $17,000, for which she had not been repaid. Buford Cowart alleged that the Smiths had promised to assist him in running Heartland but that the Smiths repeatedly refused to provide the help they had promised. He also alleged that he had performed work for Heartland between 1994 and 1998 for which he had not been paid, labor he valued at $97,000.
 

 The record reflects that, in April 2000, the Smiths propounded to the Cowarts interrogatories and requests for the production of documents. When the Cowarts apparently did not reply to those discovery requests, the Smiths filed a motion to compel discovery. The record does not reflect that the trial court ruled upon the Smiths’ motion. In their brief, the Cowarts’ counsel states that “the Cowarts provided the Smiths with all company documents in their possession, which numbered in the thousands.”
 

 For their part, the Cowarts contend in their brief to this Court that, between May 2001 and December 2008, their counsel sent notices scheduling the depositions of the Smiths on four different occasions but that the Smiths failed to appear on each such occasion. The Smiths do not directly deny this assertion; instead, they observe that the record does not contain any notices of deposition.
 

 On January 4, 2001, the Smiths filed a motion to set the case for trial, and the trial court entered an order scheduling the trial for February 22, 2001. The parties subsequently filed a joint motion to continue, which the trial court granted. On April 4, 2002, the Smiths’ counsel informed the trial court that his address had changed. On November 12, 2002, the Co-warts filed a motion to set the case for trial; the trial court scheduled the trial for February 25, 2003. The case was not tried on that date. On April 7, 2003, the Smiths’ counsel informed the trial court that his address again had changed. The trial court next scheduled the case to be tried on May 1, 2003. The case was not tried on that date. The trial court scheduled the case for trial on August 5, 2003. The case was not tried on that date. The trial court scheduled the case for trial on November 20, 2003. The Cowarts’ counsel subsequently requested that the case be continued. On August 9, 2005, the Cowarts filed another motion to set the case for trial. The Cowarts served the motion on the Smiths’ counsel at an address different from the last address the Smiths’ counsel had registered with the trial court. The trial court scheduled the trial for Novem
 
 *806
 
 ber 3, 2005. The trial was not held on that date.
 

 On February 15, 2008, the Cowarts filed another motion to set the case for trial. The Cowarts served the motion on the Smiths’ counsel at the address the Smiths’ counsel had registered with the trial court the first time he notified the court of his change of address. The trial court set the case for trial on May 12, 2008, and ordered that a copy of the order be sent to counsel for both parties. A notation in the case-action summary states that the case had been set for trial for May 12, 2008.
 

 On May 12, 2008, the Cowarts and their counsel appeared for trial, but the Smiths and their counsel did not. On that date, the trial court entered an order that stated, in pertinent part:
 

 “On May 6, 1999, the [Smiths] filed this action against Defendants H. Buford Cowart, Debbie Cowart, d/b/a DBM Enterprises, and Herman B. Cowart. On May 12, 2008, the Court set this matter for Trial. The [Smiths] failed to appear. The Court further finds that the [Smiths] have failed to prosecute their claims. Therefore, it is hereby:
 

 “ORDERED, ADJUDGED AND DECREED by the Court that all of the [Smiths’] claims against Defendants H. Buford Cowart, Debbie Cowart, d/b/a DBM Enterprises, and Herman B. Co-wart are hereby dismissed with prejudice.”
 

 The Cowarts’ counterclaims against the Smiths were not adjudicated by the trial court’s order and remained pending before the trial court.
 

 In their brief to this Court, the Cowarts state that also on May 12, 2008, they made an oral motion for forfeiture of the surety bond the Smiths had posted in conjunction with their motion for a writ of seizure filed on June 21, 1999. On June 19, 2008, the Cowarts filed a written motion to the same effect. In this motion, the Cowarts asserted that most of the items of equipment listed in the motion for a writ of seizure actually were owned by the Cowarts personally and were not owned by Heartland. Thus, the Cowarts contended, the seizure of the equipment had been wrongful and they had been wrongfully enjoined from using the equipment; they requested a forfeiture of the bond as a result. In support of the motion, Buford Cowart filed an affidavit in which he stated that most of the items of equipment were owned by the Cowarts. The Cowarts did not serve the written motion on the Smiths or on USF & G.
 

 The trial court set the motion for a hearing on June 23, 2008. The case-action summary, however, does not contain a notation to this effect.
 
 [4]
 

 On June 23, 2008, the Cowarts and their counsel appeared for the hearing and presented evidence and argument to the trial court; the Smiths and their counsel did not appear. Based on the evidence presented by the Cowarts, the trial court issued an order in which it found, among other things, that the seizure and injunction obtained by the Smiths had been wrongful:
 

 “On May 6, 1999, the [Smiths] filed this action against Defendants H. Buford Cowart, Debbie Cowart, d/b/a DBM Enterprises, and Herman B. Cowart. On July 21, 1999, the [Smiths] filed a Motion for a Writ of Seizure regarding numerous items of equipment that the [Smiths] claimed were being improperly held by the [Cowarts]. Furthermore, [the Smiths] posted a bond in the
 
 *807
 
 amount of $250,000.00 through USF & G.
 

 “On June 23, 2008,
 
 the Court heard evidence in this matter wherein most of the items of equipment belonged to the [Cowarts]
 
 and the Motion for Writ of Seizure, filed by the [Smiths] was not well taken.
 
 The Court finds that the [Cowarts] were deprived of the use of this equipment wrongfully. The Court farther finds that the [Smiths] were on notice that said equipment should not have been the basis for their Motion for Writ of Seizure.
 
 The Court further finds that the [Cowarts] were damaged in excess of the $250,000.00 bond posted by the [Smiths]. It is therefore:
 

 “ORDERED, ADJUDGED AND DECREED by the Court that the bond posted by the [Smiths] is hereby forfeited.[
 
 5
 
 ] The surety on said bond is Ordered to forthwith pay the sum of $250,000.00 to the Circuit Clerk of Macon County; the Clerk is Ordered to hold said proceeds pending further Orders from the Court.
 

 “This Court’s Order of June 24, 1999, Ordering the Writ of Seizure and Injunction is hereby vacated.”
 

 (Emphasis added.)
 

 On August 4, 2008, the Smiths’ counsel filed a motion purportedly pursuant to Rule 60(b), Ala. R. Civ. P., which he styled as a “Motion to Set Aside,” that requested that the trial court set aside its order of June 28, 2008. In the motion, the Smiths’ counsel claimed that he “has never been served by the [Cowarts] of any Motions, specifically Motions pertaining to the Surety Bond posted in this case. Furthermore, the below-signed counsel received no notice of a hearing regarding same.” The Smiths’ counsel averred that he learned about the trial court’s June 23, 2008, order through “an inquiry from [USF & G].” He contended that the June 23, 2008, order should be set aside because, among other things, the Smiths had not been notified of the hearing on the Cowarts’ forfeiture motion.
 

 On April 8, 2009, the trial court held a hearing on the Smiths’ motion to set aside the June 23, 2008, order. On April 22, 2009, the trial court entered an order denying the Smiths’ motion. In pertinent part, the trial court’s order provided:
 

 “Based on the Court’s review of the record, the [Cowarts] moved that this case be set for trial on February 15, 2008, indicating that this matter had been pending for nine years, and the [Smiths] had failed to prosecute their claims. The Court set this matter for trial for May 12, 2008. The clerk’s record indicates that all parties received notice of the trial setting, pursuant to the Court’s order. On May 12, 2008, the case was called for trial, and the [Co-warts] were present and ready for trial, while neither the [Smiths] nor their counsel were present. The Court dismissed the [Smiths’] claims and re-set the matter of the forfeiture of the bond for June 23, 2008. On June 23, 2008, the case was again called, [and] the [Co-warts] and their counsel were present, while neither the [Smiths] nor their counsel were present. The Court, after reviewing the affidavits submitted by the [Cowarts], entered its order of forfeiture of the bond on June 23, 2008.
 

 
 *808
 
 “Based on the foregoing, the Court finds that the [Smiths] had notice of the trial setting of this matter and failed to appear. The Court finds further that the [Smiths] had notice of this Court’s order dismissing their claims on May 12, 2008, and took no action. The Court finds further that the [Smiths] are not entitled to the relief they are now seeking under Rule 60(b) of the Alabama Rules of Civil Procedure.... ”
 

 In May 2009, the Smiths’ original counsel filed with the trial court a notice of withdrawal from his representation of the Smiths. Subsequently, new counsel for the Smiths filed a notice of appearance in the trial court. On June 1, 2009, the Smiths’ new counsel filed what was styled a “Motion to Alter, Vacate or Amend Pursuant to Rule 59, Alabama Rules of Civil Procedure, or In the Alternative, for Relief from Judgment or Order Pursuant to Rule 60, Alabama Rules of Civil Procedure.” In the motion, the Smiths requested that the trial court vacate its orders of May 12, 2008, June 23, 2008, and April 22, 2009. Among other things, the Smiths asserted through their new counsel that their previous counsel did not receive notice of either the May 12, 2008, trial of the Smiths’ claims or the June 23, 2008, hearing on the Cowarts’ motion for forfeiture of the surety bond and, therefore, that the orders of the trial court should be vacated. The Smiths contended, among other things, that the trial court’s May 12, 2008, order dismissing the Smiths’ claims for lack of prosecution “resulted from the mistake, inadvertence or excusable neglect of the Smiths’ then-counsel.” The motion further stated that failure to set aside the orders of the trial court would violate the Smiths’ right to due process.
 

 On June 7, 2009, the Smiths filed a notice of appeal (case no. 1081095) of the trial court’s April 22, 2009, order denying the Smiths’ motion to vacate the trial court’s June 23, 2008, order requiring forfeiture of the surety bond. On June 29, 2009, this Court, by order, remanded the action to the trial court because it appeared that all claims — in particular the Cowarts’ counterclaims — had not been adjudicated and that, therefore, the Smiths had appealed from a nonfinal judgment. The June 29, 2009, order stated that if the trial court did not adjudicate the remaining claims or certify the April 22, 2009, order as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P., this Court would dismiss the appeal. On July 17, 2009, this Court dismissed the Smiths’ appeal because the trial court had not entered a final judgment on the matter.
 

 On August 3, 2009, the trial court held a hearing. On August 26, 2009, the trial court entered an order in which it dismissed the Cowarts’ counterclaims with prejudice upon oral motion of the Cowarts. The trial court’s order explicitly stated that “[t]his order will be a final judgment of all claims in this matter, as all parties’ claims have now been adjudicated.” The court simultaneously denied the Smiths’ June 1, 2009, motion.
 

 On October 1, 2009, the Smiths filed the present appeal from the trial court’s August 26, 2009, order.
 

 II. Standard of Review
 

 The parties disagree concerning the standard of review to be applied in this appeal. The disagreement stems from the Cowarts’ contention that the Smiths are appealing from the denial of the Rule 60(b), Ala. R. Civ. P., aspect of the Smiths’ June 1, 2009, motion for relief from judgment.
 

 As indicated by its title, the Smiths’ June 1, 2009, motion purported to seek relief from the trial court under both Rule 59 and Rule 60, Ala. R. Civ. P. We also
 
 *809
 
 note that the motion was filed before the entry of a final judgment by the trial court on August 26, 2009. Despite having thus been filed prematurely, i.e., before the entry of a final judgment, the motion ripened for consideration by the trial court simultaneously with that court’s entry of a final judgment on August 26. See
 
 Dubose v. Dubose,
 
 964 So.2d 42, 45 (Ala.Civ.App. 2007) (holding that a prematurely filed motion under Rule 60(b) ripened for the trial court’s consideration upon the trial court’s entry of a final judgment);
 
 Ex parte Lang,
 
 500 So.2d 3, 5 (Ala.1986) (to same effect); and
 
 Melvin v. Loats,
 
 23 So.3d 666, 667 (Ala.Civ.App.2009) (holding that a prematurely filed motion for a new trial under Rule 59 ripened for the trial court’s consideration upon the trial court’s entry of a final judgment).
 

 The fact that the Smiths’ June 1, 2009, motion ripened for the trial court’s consideration, however, does not mean that the trial court had before it a proper request for relief under the Rule 60(b) aspect of that motion. This Court recently explained in
 
 Ex parte Haynes,
 
 58 So.3d 761 (Ala.2010):
 

 “ ‘The Alabama Rules of Civil Procedure do not contemplate the filing of a Rule 60(b) motion during the pen-dency of a Rule 55(c) motion. But while the Rules do not contemplate it, they do not preclude it, either. Under Rule 59.1, the Rule 55(c) motion was denied as a matter of law on November 26, 1985 (90 days after August 28, 1985); upon that denial, the default judgment of August 12 became “final” within the contemplation of Rule 60(b) — “[o]n motion ... the court may relieve a party ... from a final judgment” — and the court was free to consider the Rule 60(b) motion, which had been theretofore premature. We consider that the Rule 60(b) motion was quickened and became a pending motion as of November 27, 1985, without the necessity of a refiling. Thus, the court had jurisdiction of that motion at the time of its order granting the motion on December 3,1985.’
 

 “[Ex parte Lang,
 
 500 So.2d 3, 4-5 (Ala.1986).]
 

 “Lang
 
 involved successive Rule 55(c) and Rule 60(b) motions, but as the defendants observe, this Court subsequently allowed an alternative Rule 55(c) and Rule 60(b) motion in
 
 Ex parte Vaughan,
 
 539 So.2d 1060, 1061 (Ala.1989). As the Court of Civil Appeals has succinctly explained:
 

 “ ‘[Wjhile it frowns upon the practice, Alabama law allows a party to join a request for relief from judgment under Rule 60(b) with a request for a post-judgment remedy affected by Rule 59.1’s 90-day “automatic denial.” See
 
 Ex parte Vaughan,
 
 539 So.2d 1060 (Ala.1989). In
 
 Vaughan,
 
 our Supreme Court considered the propriety of a motion seeking an order pursuant to Rule 55(c), Ala. R. Civ. P., setting aside a default judgment and alternatively seeking relief from the judgment pursuant to Rule 60(b). Relying upon its earlier opinion in
 
 Ex parte Lang,
 
 500 So.2d 3, 5 (Ala.1986), the
 
 Vaughan
 
 court concluded that such a motion seeking alternative relief was not precluded by the Rules of Civil Procedure, although “the better practice is to file a Rule 60(b) motion only when there is a final judgment in the case.” 539 So.2d at 1061.’
 

 “Ex parte Gamble,
 
 709 So.2d 67, 70 (Ala.Civ.App.1998).
 

 “The problem with the defendants’ argument is that in the motion filed here, no distinction is made between the grounds for relief under Rule 55(c) and those for relief under Rule 60(b). The
 
 *810
 
 defendants’ motion makes no mention of Rule 60(b), but, more importantly, in order plausibly to be considered a viable Rule 60(b) motion it must ask for relief on grounds that amount to more than a request for a mere reconsideration of the denial of the defendants’ original Rule 55 motion. Here, the sole ground for relief stated in the motion was the defendants’ attorney’s ‘inadvertence’ and ‘excusable neglect.’ Because there existed nothing in the motion to distinguish the Rule 55(c) motion from the purported Rule 60(b) motion, any Rule 60(b) aspect to the motion would simply constitute a motion to ‘reconsider’ the Rule 55(c) motion.
 

 “In
 
 McIntyre v. Satch Realty, Inc.,
 
 961 So.2d 135, 138-39 (Ala.Civ.App.2006), the Court of Civil Appeals stated:
 

 “‘Although McIntyre and 4M’s Rule 60(b) motion provided more factual detail than their previously denied Rule 55(c) motion had and although their Rule 60(b) motion actually explained the allegedly meritorious defenses to which they had merely alluded in their previous motion, “the relief sought reveals that [McIntyre and 4M were] simply attempting to have a second review of the [default] judgment and to have the trial court reconsider its previous denial of [their] post-judgment motion.”
 
 Foster v. Foster,
 
 636 So.2d 467, 468 (Ala.Civ.App.1994).
 
 Rule 60(b), however, cannot serve as a basis for a motion that, in effect, seeks a reconsideration of matters already considered by the trial court in a previous postjudgment motion when the facts alleged in the Rule 60(b) motion “were known by the moving party at the time of his original [postjudgment] motion.
 
 ”
 
 Ex parte Dowling, 477
 
 So.2d 400, 403 (Ala.1985). Such a Rule 60(b) motion, and a subsequent appeal of the denial of such a motion, cannot be used as a substitute for an appeal of the trial court’s original judgment. See, e.g.,
 
 Landers v. Landers,
 
 812 So.2d 1212, 1216 (Ala.Civ.App.2001) (“Alabama precedent is clear that a Rule 60(b) motion may not be used to seek reconsideration of a trial court’s denial of a postjudgment motion, nor are Rule 60(b) motions substitutes for appeal.”); and
 
 Pace v. Jordan,
 
 348 So.2d 1061 (Ala.Civ.App.1977) (having failed to obtain review by appeal following denial of his postjudgment motion for a new trial, the plaintiff may not obtain review pursuant to the filing of a Rule 60(b) motion, because that rule does not provide a substitute for an appeal).’
 

 “(Emphasis added.) See also
 
 Ex parte Dowling, 477
 
 So.2d 400, 403 (Ala.1985) (stating that ‘[w]here the facts alleged in the motion to reconsider were known by the moving party at the time of his original motion, Rule 60(b) does not authorize a motion to reconsider’);
 
 Brown v. Martin,
 
 394 So.2d 375, 377 (Ala.Civ.App.1980) (declining to treat appellant’s motion to reconsider an order denying his motion to set aside a default judgment as a motion for relief under either Rule 60(b)(1) or 60(b)(6) because the ‘motion was nothing more than a motion for the trial court to reconsider its previous order. Practically nothing different was presented by the motion to reconsider than was presented by the motion to set aside the default judgment.’).”
 

 58 So.3d at 764-66 (footnotes omitted)
 

 As in
 
 Haynes,
 
 the motion filed by the Smiths on June 1, 2009, contains no grounds for relief under Rule 60(b) that are distinguishable from the grounds contained in that motion for relief under Rule 59, and, thus, “any Rule 60(b) aspect to the motion would simply constitute a motion to
 
 *811
 
 ‘reconsider’ the Rule [59] motion.” 58 So.3d at 765. The trial court’s August 26, 2009, order is properly considered as one that constitutes a final judgment in this case and that simultaneously denies relief from that judgment under Rule 59. Consistent with
 
 Haynes,
 
 the appeal before us is properly considered as being from that final judgment.
 

 Insofar as the trial court’s August 26, 2009, final judgment dismissed the Smith’s claims for lack of prosecution, we note that “ ‘[t]he dismissal of a civil action for want of prosecution because of the plaintiffs failure to appear at trial falls within the judicial discretion of a trial court and will not be reversed upon an appeal except for an abusive use of that discretionary power.’ ”
 
 Hollander v. Nance,
 
 888 So.2d 1275, 1277-78 (Ala.Civ.App.2004) (quoting
 
 Thompson v. McQuagge,
 
 464 So.2d 105, 106 (Ala.Civ.App.1985)). Insofar as the trial court’s final judgment finding the seizure of equipment and the enjoining of the Co-warts to have been wrongful, and accordingly ordering the forfeiture of the bond posted by the Smiths, the issue presented is whether the Smiths were deprived of due process in relation to the entry of the judgment because they did not receive notice and an opportunity to be heard. As presented in this case, the question turns on the proper application of legal principles to undisputed facts and is reviewed by this court de novo. See, e.g.,
 
 Ex parte Soleyn,
 
 33 So.3d 584, 587 (Ala.2009) (stating that “it is well established that where the issues involve only the application of law to undisputed facts appellate review is de novo”).
 

 III. Analysis
 

 A. Dismissal of the Smiths’ Claims
 

 Rule 41(b), Ala. R. Civ. P., provides:
 

 “For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.”
 

 The Smiths argue that, although a trial court has the power to dismiss a plaintiffs action for failure to prosecute, such a sanction is a severe one and should not be employed merely for a prolonged period of inactivity by the plaintiff. Indeed, this Court has stated that, “since dismissal with prejudice is a drastic sanction, it is to be applied only in extreme situations” and that, as a result, “appellate courts will carefully scrutinize such orders and occasionally will find it necessary to set them aside.”
 
 Smith v. Wilcox County Bd. of Educ.,
 
 365 So.2d 659, 661 (Ala.1978).
 

 This Court also has stated, however:
 

 “Although dismissal with prejudice is a harsh sanction that should be used only in extreme circumstances, there nevertheless comes a point in every action when the interest of the trial court in controlling its calendar and its interest in avoiding risk to the defendant outweigh the interest in disposing of litigation on the merits.”
 

 Henderson v. G & G Corp.,
 
 582 So.2d 529, 531 (Ala.1991). This Court also has observed that dismissal of a plaintiffs action under Rule 41(b), Ala. R. Civ. P.,
 

 “is warranted where there is a ‘clear record of delay, willful default or contumacious conduct by the plaintiff.’
 
 Selby v. Money,
 
 403 So.2d 218, 220 (Ala.1981). Because the trial judge is in the best
 
 *812
 
 position to assess the conduct of the plaintiff and the degree of noneompliance, his decision to grant a motion to dismiss for failure to prosecute will be accorded considerable weight by a reviewing court.”
 

 Jones v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
 
 604 So.2d 332, 341 (Ala.1991).
 

 The Smiths contend that there is no evidence of intentional delay or contumacious conduct in this case. The only evidence is that the Smiths and their counsel failed to appear for the trial setting of May 12, 2008, and that their failure was simply due to the fact that the Smiths’ counsel did not receive notice of either the Cowarts’ motion to set the case for trial or the trial court’s order setting the case for trial on that date. The Smiths argue that, at most, this constitutes excusable neglect by their previous counsel that did not warrant the “harsh sanction” of dismissal of their claims.
 

 In their brief to this Court, the Cowarts state that on no less than four of the six occasions on which this case was rescheduled for trial before the final setting of May 12, 2008, the Cowarts and their counsel appeared in court, but the Smiths and their counsel failed to appear. As noted in the rendition of the facts, the Cowarts also charge that the Smiths failed to appear for scheduled depositions four separate times. The Smiths do not directly deny either of these charges. Instead, they state that the record fails to support these claims.
 

 As to the Cowarts’ assertions regarding the Smiths’ failure to appear for trial settings on four occasions before the May 12, 2008, hearing, the Cowarts initially made this claim in the trial court in their response in opposition to the Smiths’ June 1, 2009, motion to set aside the trial court’s previous orders. The Smiths did not dispute this claim before the trial court, and, as indicated, they do not directly deny it before this Court. The trial court expressly found in its May 12, 2008, order that the Smiths had “failed to prosecute their claims.”
 

 With respect to the May 12, 2008, hearing, in particular, the trial court explicitly concluded in its April 22, 2009, order denying the August 4, 2008, motion filed by the Smiths’ previous counsel that “[t]he clerk’s record indicates that all parties received notice of the trial setting, pursuant to this Court’s order.” We find no evidence to the contrary in the record before us.
 

 In addition, our review of the record reveals that the case-action summary contains an entry for February 15, 2008, that makes note of the filing of the Co-warts’ motion to set the case for trial. The case-action summary also contains an entry dated March 14, 2008, stating that the trial court had ordered that the case be set for trial on May 12, 2008.
 

 “It is the prevailing rule in Alabama ‘that a litigant ... has responsibility for keeping track of his case and knowing its status.’
 
 D. & J. Mineral & Mining, Inc. v. Wilson,
 
 456 So.2d 1099, 1100 (Ala.Civ.App.1984). Therefore, a trial court ‘owes no duty to notify a party of the setting of a case or to continue a case because of the absence of a party....’
 
 D. & J. Mineral,
 
 456 So.2d at 1100-01.”
 

 Burleson v. Burleson,
 
 19 So.3d 233, 239 (Ala.Civ.App.2009).
 

 The Smiths’ action had been pending in the trial court for nine years before that court entered its order of dismissal. The case-action summary indicates that the action languished in the trial court for up to eight years without any activity by the Smiths.
 
 Henderson,
 
 582 So.2d at 531. Under the totality of the particular circumstances presented in this case, we cannot say that the trial court exceeded its discre
 
 *813
 
 tion in dismissing the Smiths’ claims and denying the Smiths’ motion to alter or vacate that dismissal.
 

 B. The Trial Court’s June 23, 2008, Order
 

 The Smiths contend that the trial court violated their basic right of due process in entering its June 23, 2008, judgment finding that the seizure of equipment and the enjoining of the Cowarts had been wrongful and ordering the forfeiture of the surety bond. The Smiths contend that they were provided no notice of the motion or of any hearing at which it would be considered and that this falls short of the minimum requirements for due process. They note that their previous counsel denied receiving any notice of the Cowarts’ motion that led to the hearing or any notice of a setting of a hearing on the Cowarts’ motion. (They also observe that the Cowarts did not serve a copy of their written motion on USF & G.) The Smiths argue that the entry of the June 23, 2008, judgment without providing notice and an opportunity to be heard when for nine years the Cowarts had given no indication that they needed relief from the writ of seizure constitutes an error of due process that requires the reversal of the trial court’s final judgment.
 

 Among other things, the Smiths cite
 
 Humane Society of Marshall County v. Adams,
 
 439 So.2d 150, 152 (Ala.1983), for the proposition that “the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.” In
 
 Adams,
 
 this Court observed:
 

 “ ‘The doctrine of the authorities is that whenever it is sought to deprive a person of his property, or to create a charge against it, preliminary to, or which may be made the basis of, taking it, the owner must have notice of the proceeding, and be afforded an opportunity to be heard as to the correctness of the assessment or charge. It matters not what the character of the proceeding may be, by virtue of which his property is to be taken, whether administrative, judicial, summary, or otherwise.’ ”
 

 439 So.2d at 152 (quoting
 
 Jenks v. Stump,
 
 41 Colo. 281, 286, 93 P. 17, 19 (1907)).
 

 In the present case, the trial court set a date for a hearing on the Cowarts’ motion. On June 23, 2008, the Cowarts and their counsel appeared for the hearing, but the Smiths and their counsel did not appear. The trial court heard evidence from the Cowarts. Based on the evidence presented to it in that hearing, the trial court made factual findings and entered a judgment on the merits to the effect that the Cowarts “were deprived of the use of this equipment wrongfully” and that they “were damaged in excess of the $250,000 bond posted by the [Smiths].”
 

 As noted, the Smiths’ contention is that they received no notice of the June 23, 2008, hearing, nor any opportunity to be heard regarding the issues adjudicated in it. The record supports their contention. When the Cowarts filed their written motion on June 19, 2008, just four days before the hearing, they sent a copy of the motion to an address of the Smiths’ previous counsel that, in April 2003, the Smiths’ counsel had informed the trial court was no longer his correct address. In the Smiths’ August 4, 2008, motion to set aside the trial court’s judgment, the Smiths’ previous counsel represented that he never received a copy of the Cowarts’ motion, and the Cowarts do not dispute this claim.
 

 Furthermore, when the trial court set a date for the hearing on the Cowarts’ motion, it did not do so by order or even by entry in the case-action summary. The Smiths’ previous counsel stated that he never received notice that there would be a
 
 *814
 
 hearing on the motion; nothing in the final judgment or other orders entered by the trial court contradicts this assertion. The trial court repeatedly stated in its April 22, 2009, order denying the Smiths’ first motion to set aside the judgment that the Smiths’ counsel received notice of the May 12, 2008, trial setting for the Smiths’ claims, but it never stated that the record indicated that the Smiths’ counsel received notice of the June 23, 2008, hearing. If the Smiths’ counsel did not receive any notice — even through the case-action summary — of a hearing on the Cowarts’ motion, it would not be surprising that the Smiths and their counsel failed to appear for that hearing.
 

 The Cowarts argue that the trial court orally set the date for the hearing on their motion during the May 12, 2008, hearing. Accordingly, the Cowarts argue, if the Smiths had appeared for the May 12, 2008, hearing in which the trial court dismissed the Smiths’ claims against the Cowarts, the Smiths would have had notice of the June 23, 2008, hearing on the Cowarts’ motion against the Smiths. Even assuming this to be true, the fact remains that the Smiths and their counsel were not present at the May 12, 2008, hearing. An appropriate effort therefore was necessary in order to provide notice to the Smiths and their counsel of the subsequent hearing on the Cowarts’ motion.
 

 In sum, it is undisputed that neither the Smiths nor their counsel received advance notice of the June 23, 2008, hearing. Consequently, we reverse the trial court’s final judgment insofar as it reaffirmed the June 23, 2008, order finding that the seizure of equipment and the enjoining of the Co-warts had been wrongful and accordingly ordering a forfeiture of the bond that had been posted by the Smiths.
 

 IV. Conclusion
 

 We affirm the trial court’s judgment insofar as it dismissed the Smiths’ claims against the Cowarts for failure to prosecute those claims. We reverse the trial court’s judgment insofar as it reaffirmed the trial court’s June 23, 2008, order as described above, and we remand the cause for further proceedings consistent with this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 COBB, C.J., and WOODALL, BOLIN, and MAIN, JJ., concur.
 

 [1]
 

 . A copy of the SouthTrust assignment to the Smiths states that the assignment concerns a security interest in "those certain equipment, furniture, fixtures, accessories, parts and inventory of Heartland Products, Inc., more specifically described [in] attached Exhibit 'A.' ” "Exhibit A” contains a description of the real property.
 

 [2]
 

 . At some point in the course of the litigation USF & G was acquired by Travelers Bond & Financial Products, which became the successor in interest on the bond. For the sake of simplicity, we refer to the surety as USF & G throughout this opinion.
 

 [3]
 

 . Rule 64(b)(2)(B), Ala. R. Civ. P., provides:
 

 "If the court upon preliminary examination finds that the risk of concealment, transfer or other disposition of or damage to the property by permitting it to remain in the possession of the defendant between the filing of the action and the time of a hearing is real, then the court shall forthwith enter an order authorizing the issuance of a writ of seizure but the court shall provide in said order that the defendant is entitled, as a matter of right, to a pre-judgment hearing on the issue of dissolution of the writ if a written request for hearing is served on counsel for the plaintiff within five (5) days from the date of seizure of the property by the sheriff or other duly constituted officer. If such a request is made, the writ shall expire upon the fifteenth day from said date of seizure unless the court, after hearing, continues the order in effect. The expiration of the writ shall not prejudice the right of the plaintiff to a reinstatement thereof but any such reinstatement shall not be made without notice and hearing. If no request for a hearing is made within the five- (5-) day period, the writ shall remain in effect pending further order of the court but, the court, in its discretion, may hear a
 
 *805
 
 request for dissolution of the writ although said request is served more than five (5) days from the date of seizure.”
 

 [4]
 

 . The case-action summary does contain a notation dated June 19, 2008, indicating that the Cowarts had filed their forfeiture motion with the trial court.
 

 [5]
 

 . We note that the bond posted by the Smiths and ordered forfeited by the trial court provides, among other things, that "Nathan Smith IV and Dale D. Smith (‘Plaintiffs’) and the undersigned sureties are held and firmly bound unto [the Cowarts] in the sum of Two Hundred Fifty Thousand and no/100 ($250,-000.00) Dollars" based on the conditions subsequently described in the bond.